UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LEE BROCK, <br><br>   Plaintiff, <br><br> v. <br><br> TUOLUMNE COUNTY SHERIFF'S OFFICE, et al., <br><br>   Defendants. | CASE NO. 1:17-cv-01610-NONE JLT (PC) <br><br> **FINDINGS AND RECOMMENDATIONS TO GRANT IN PART DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE** <br> (Doc. 56) <br><br> **FOURTEEN-DAY DEADLINE** |

This matter is before the Court on Defendants' June 29, 2020, motion to dismiss the Fourth Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and motion to strike pursuant to Federal Rule of Civil Procedure 12(f). (Doc. 56.) Plaintiff has filed an opposition. For the reasons set forth below, the Court will recommend that Defendants' motion to dismiss and motion to strike be granted in part.[1]

**I.    Plaintiff's Allegations**

Plaintiff brings this action against Tuolumne County Jail Deputy A. Smith, Sergeant Ransom, Sergeant McNeil, and John Doe (who may be either Deputy Stallings, Deputy Hurtado,

---

[1] On June 11, 2020, Defendants moved to dismiss Plaintiff's Fourth Amended Complaint, which, at the time, had merely been lodged and was not the operative pleading. (Doc. 51.) Plaintiff moved to deny that motion to dismiss and to strike it. (Doc. 52.) After the Fourth Amended Complaint was ordered filed (see Doc. 54), Defendants refiled their motion to dismiss, which is the matter presently before the Court. Accordingly, the previously filed motion to dismiss will be denied as moot, as will Plaintiff's motion to strike.

Deputy Long, Deputy Richards, or Deputy Lee). Plaintiff's allegations may be fairly summarized as follows:

On September 2, 2016, between 11 p.m. and 12:00 a.m., Plaintiff was arrested on an outstanding warrant and taken to the Tuolumne County Jail for booking. An Initial Inmate Classification form completed at 12:00 a.m. on September 3 (apparently before Plaintiff even arrived at the jail) suggests that jail employees were aware that Plaintiff had special housing factors by virtue of being a "Northerner – Drop Out." Fourth Am. Compl. Ex. D. The unidentified individual who completed this form recommended that Plaintiff be housed in protective custody. Id. The form further indicates that Plaintiff's final housing level should have been administrative segregation. See id.

During the intake process at the jail, Plaintiff informed the booking officer, Deputy A. Smith, that he was a dropout from a Northern Mexican gang and needed to be housed in protective custody. Deputy Smith noted this information on intake paperwork on September 3 at 12:22 a.m. as a reason why Plaintiff should not be housed in general population. Fourth Am. Compl. Ex. A. Similarly, a medical pre-screening from completed by Officer King on September 3 at 1:19 a.m. noted that Plaintiff's "Northern, Drop Out" status was a reason for him not to be housed in general population. Fourth Am. Compl. Ex. B.

At the Tuolumne County Jail, sergeants are responsible for classifying and housing inmates appropriately. Plaintiff informed Sergeant Ransom, who was on duty during intake, that he was a Northern Dropout. Nonetheless, Sergeant Ransom authorized Plaintiff's placement in the C-Tank, an active, non-protective custody, "whites-only" tank. Sergeant McNeil, who reviewed this decision and Plaintiff's record following the shift change, ratified the decision.

Shortly after Sergeant McNeil arrived, Plaintiff was escorted to his assigned housing unit by an escorting officer, whom Plaintiff believes to be either Deputy Stallings, Deputy Hurtado, Deputy Long, Deputy Richards, or Deputy Lee. When Plaintiff asked where he would be housed, the escorting officer told him that he was to be housed in the C-Tank. Plaintiff immediately told the escorting officer that he was a Northern gang dropout, to which this officer said, "Well this

isn't right," but he took Plaintiff to C-Tank anyway. Within minutes of his arrival, Plaintiff was assaulted by 3-4 inmates who were aware of his dropout status. Several deputies, including the escorting officer, broke up the attack and escorted Plaintiff to medical.

## II.   Legal Standards

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's

liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

**III.   Discussion**

Plaintiff, who was a pretrial detainee at the time of the incident, proceeds on a Fourteenth Amendment failure-to-protect claim against Defendants. The Ninth Circuit set forth the following criteria for a pretrial detainee's failure-to-protect claim:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

Castro v. County of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. Aug. 15, 2016).

With respect to the third factor, the defendant's conduct must be objectively unreasonable, which "turns on the 'facts and circumstances of each particular case.'". Castro v. County of Los

1    Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016) (citing Kingsley v. Hendrickson, 576 U.S. 389, 135

2    S. Ct. 2466, 2473 (2015)); see also Restatement (Second) of Torts § 500 cmt. a (Am. Law Inst.

3    2016) (recognizing that "reckless disregard" may be shown by an objective standard under which

4    an individual "is held to the realization of the aggravated risk which a reasonable [person] in his

5    place would have, although he does not himself have it"). While the Court analyzes Plaintiff's

6    claims under the Fourteenth Amendment instead of under the Eighth Amendment, the analyses

7    for both are similar. See Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) ("Pretrial detainees'

8    rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth

9    Amendment, [and therefore, the court] applies the same standards.")

10        As with their previous motion to dismiss, Defendants argue here that Plaintiff fails to

11   allege facts that would suggest that any of the Defendants appreciated the potential risk to

12   Plaintiff's safety by placing him in "general population." Defendants contend that to impose

13   liability on any one of them, Plaintiff is required to allege that the Defendants knew there existed

14   a specific threat of harm to Plaintiff. They argue that because Plaintiff does not allege they were

15   aware that any of the inmates in general population knew that Plaintiff was a Northerner dropout,

16   they cannot be held liable for harm that followed his placement there.

17        Though a prison official need not "believe to a moral certainty" that an inmate is at risk of

18   harm, he must have more than a "mere suspicion" that harm may occur. Berg v. Kincheloe, 794

19   F.2d 457, 459 (9th Cir. 1986). "Speculative and generalized fears of harm ... do not rise to a

20   sufficiently substantial risk of serious harm." Williams v. Wood, 223 Fed. App'x 670, 671 (9th

21   Cir. 2007). However, the obviousness of the risk may be sufficient to establish such subjective

22   knowledge. See Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

23        Defendants are correct that liability may not be imposed when the threat of harm is "mere

24   suspicion." They are also correct that a failure to protect claim cannot be based solely on an

25   inmate's placement in a cell with a rival gang member. See Labatad v. Corrs. Corp. of America,

26   714 F.3d 1155, 1160-61 (9th Cir. 2013). In Labatad, the Hawaii prison did not have a policy of

27   separating rival gang members but considered gang affiliation as a factor in making cell

28

assignments. 714 F.3d at 1157. Labatad had gotten into a fight with an inmate, who happened to be a member of a rival gang, but in the investigation of the incident, the inmates said the fight was not gang related, that they had shaken hands and had no other issues. Id. Following the fight, pursuant to prison policy, the inmates were placed in administrative segregation during the investigation. Id. Labatad was placed in a cell with another member of the rival gang. Id. Labatad and this inmate had no prior problems, were not listed as needing to separated and were housed in general population together previously with no incident. Id. Three days later, the new cellmate assaulted Labatad. Id. Labatad sued, claiming that the decision to house him in a cell with this inmate, after he had previously fought with another member of that gang, violated the Eighth Amendment. Id. at 1158. He argued that the policy allowing inmates of rival gangs to be housed together and the decision to place him in the cell with the rival gang member were unconstitutional. Id.

The Ninth Circuit held that summary judgment in favor of the prison was warranted based on the objective and subjective factors of the Eighth Amendment analysis. Id. at 1161. The Court pointed out that the record reflected that the inmates had been in general population together with no incidents, and they were not listed as needing to be housed separately from each other. Id. Even the fact that Labatad had fought another member of this rival gang a few days earlier did not justify a finding of deliberate indifference due to the assurances that the fight was not related to their gang affiliations. Id.

The circumstances presented here differ from those in Labatad. The facts demonstrated that none of the defendants were aware of a gang-related risk since they were assured that Labatad's earlier fight was not gang-related. Also, the institution did not have a policy of separating gang members. On those facts, the Ninth Circuit held that the mere placement of an inmate with a rival gang member does not state a failure to protect claim. In this case, Plaintiff alleges that he is a dropout of the Northerners and he was repeatedly recommended for protective custody by jail employees in the past due to his dropout status[2].

---

[2] Because the plaintiff does not contend the attack was motivated by his race and he does not specifically allege that he is Latino or non-white, and because the plaintiff is adamant that the attack was motivated by his gang dropout

Also, the risk associated with the housing decision to place the plaintiff in the "whites-only" cell was recognized by several jail employees, including Deputy Smith and the escorting officer. These allegations shift the threat of harm from speculative to one that would have been sufficiently serious to a reasonable officer in the Defendants' position. While additional discoverable facts may negate the obviousness of this threat, these allegations are sufficient to state a claim at the screening stage.

Notwithstanding the foregoing, there is no factual basis to find that Deputy Smith played any role in the decision to house Plaintiff in the C-Tank. To the contrary, Plaintiff alleges that classification and housing decisions are made by sergeants. Thus, it does not appear that Deputy Smith "made an intentional decision with respect to the conditions under which the plaintiff was confined." Accordingly, Plaintiff's failure-to-protect claim must be dismissed as to Deputy Smith.

Next, Plaintiff alleges that the escorting officer recognized and then disregarded the serious threat of harm to Plaintiff. While the full extent of this Doe Defendant's ability to respond to the serious risk of harm may be developed through discovery, Plaintiff's allegations are, liberally construed, sufficient to give rise to a plausible claim for failure to protect. Nonetheless, the Court finds that dismissal of this claim is appropriate against Deputies Stallings, Hurtado, Long, Richards, and Lee because Plaintiff fails to provide any facts to determine which of these officers, if any, is the Doe defendant. This dismissal is without prejudice to Plaintiff filing an amended complaint once he identifies the specific individual who escorted him. See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980) (holding that "where the identity of the alleged defendant[ ][is] not [] known prior to the filing of a complaint[,] the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.").

Defendants also move to strike a retaliation claim that they read into the pleading. See

---

status, the Court declines to assume that the attack was racially motivated. Though the fact that the plaintiff was a member of a gang originating out of Mexico, the Court has no reason to believe that every member of the Northerner's gang is Latino or non-white.

Defs.' Mot. Dismiss 14. The Court did not read such a claim in the Fourth Amended Complaint, and Plaintiff notes that he has not asserted one. See Pl.'s Opp'n 3. Accordingly, the motion to strike should be denied as moot.

**IV. Conclusion**

Based on the foregoing, the Court **RECOMMENDS** that:

1. Defendants' June 11, 2020, motion to dismiss (Doc. 51) and Plaintiff's June 30, 2020, motion to strike (Doc. 52) be **DENIED** as moot; and

2. Defendants' July 29, 2020, motion to dismiss (Doc. 56) be **GRANTED IN PART**. Plaintiff's failure-to-protect claim should be allowed to proceed against Sergeant Ransom, Sergeant McNeil, and the Doe Defendant. The failure-to-protect claim against Deputy Smith should be dismissed with prejudice, and the failure-to-protect claim against Deputy Stallings, Deputy Hurtado, Deputy Long, Deputy Richards, and Deputy Lee should be dismissed without prejudice. Defendants' motion to strike should be denied as moot.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __September 10, 2020__                /s/ Jennifer L. Thurston
                                                                                   UNITED STATES MAGISTRATE JUDGE